IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN RODRIGUES, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 18-00027 ACK-RLP |
| | ) |
| COUNTY OF HAWAII; SAMUEL JELSMA, | ) |
| individually, DOE PERSONS 1-10; | ) |
| DOE PARTNERSHIPS 1-10; DOE | ) |
| CORPORATIONS 1-10; ROE | ) |
| "NON-PROFIT" CORPORATIONS 1-10; | ) |
| AND ROE GOVERNMENTAL | ) |
| ENTITIES 1-10, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER GRANTING DEFENDANTS COUNTY OF HAWAII AND SAMUEL JELSMA'S MOTION TO DISMISS COMPLAINT

For the reasons discussed below, the Court GRANTS Defendants County of Hawaii and Samuel Jelsma's Motion to Dismiss filed on January 26, 2018, ECF No. 5, and dismisses all of Plaintiff's claims WITHOUT PREJUDICE.

### PROCEDURAL BACKGROUND

On January 9, 2018, Plaintiff John Rodrigues, Jr. ("Plaintiff") filed a Complaint in state court against the County of Hawaii (the "County"), Samuel Jelsma ("Defendant Jelsma," and collectively with the County, the "County Defendants"), Doe Persons 1-10, Doe Partnerships 1-10, Doe Corporations 1-10, Roe "Non-Profit Corporations 1-10, and Roe Governmental Entities 1-10 (collectively with Doe Persons 1-10,

1

Doe Partnerships 1-10, Doe Corporations 1-10, Roe Non-Profit Corporations 1-10, the "Doe Defendants"). ECF No. 1-2 ("Compl."). The Complaint alleges the following eight counts: (1) violation of 42 U.S.C. § 1983 ("section 1983") by Defendant Jelsma; (2) violation of section 1983 by the County; (3) false arrest/false imprisonment; (4) defamation "per se"; (5) defamation "per quod"; (6) false light; (7) intentional infliction of emotional distress ("IIED"); and (8) negligent infliction of emotional distress ("NIED"). Compl. ¶¶ 70-132.

On January 18, 2018, the County Defendants filed a notice of removal with this Court. ECF No. 1. Later that month, on January 26, 2018, the County Defendants filed a Motion to Dismiss ("Motion"). ECF No. 5. On March 27, 2018, Plaintiff filed an Opposition to the County Defendants' Motion ("Opposition" or "Opp."). ECF No. 9. On March 29, 2018, the County Defendants filed a Reply to Plaintiff's Opposition ("Reply"). ECF No. 11. The Court held a hearing on the County Defendants' Motion on April 16, 2018.

**FACTUAL BACKGROUND**

According to the Complaint, Plaintiff is a retired law enforcement officer with the Hawaii County Police Department. Compl. ¶ 9. He served "for an aggregate of 10 years or more," id. ¶ 59, and previously met the standards for qualification in firearms training for active law enforcement officers with the

2

Hawaii County Police Department, id. ¶ 60. At all relevant

times, Plaintiff was a "qualified law enforcement officer" as

that term is defined under 18 U.S.C. § 926C (the "Law

Enforcement Officers Safety Act" or "LEOSA"). Id. ¶ 67.

On or about January 26, 2017, Plaintiff called 9-1-1

to request police assistance after being threatened by an

individual known as Wesley "Mana" Brooks ("Brooks"). Id. ¶¶ 11-

12. Specifically, Brooks had brandished a firearm and fired a

round at Plaintiff. Id. ¶ 13.

When Hawaii County Police Department officers arrived

at the scene, Defendant Jelsma—a Captain in the Hawaii County

Police Department—asked Plaintiff if he kept any firearms in his

vehicle. Id. at 14. Plaintiff responded that he did keep

firearms in the vehicle, id. ¶ 15, which prompted Defendant

Jelsma to state: "we need a consent from you to enter your

vehicle," id. ¶ 16. Plaintiff immediately consented to a search

of his vehicle, and officers therein recovered a shotgun and a

9mm handgun. Id. ¶¶ 17, 28.

Meanwhile, after consenting to the vehicle search,

Plaintiff began describing to Defendant Jelsma the history

between Plaintiff's family and Brooks. Among other incidents,

Brooks previously made death threats against Plaintiff's son

while brandishing an AK-47 assault rifle and a 9mm handgun. Id.

¶ 19. Brooks also stalked Plaintiff's son at his workplace and

3

threatened his life in front of others. Id. ¶ 20. These death threats prompted Plaintiff's son to file at least three prior police reports. Id. ¶ 18.

Plaintiff further told Defendant Jelsma that, although Brooks's threats continued to escalate, "the Hawaii County Police Department was doing nothing to investigate the threats to his son's life and Brooks' unlawful possession and use of firearms." Id. ¶ 25. Defendant Jelsma first responded that Plaintiff should have called a supervisor at the Hawaii County Police Department, id. ¶ 26, but he thereafter began to ignore Plaintiff. Id. ¶ 27.

After officers recovered the firearms from Plaintiff's vehicle, Defendant Jelsma instructed Plaintiff to drive himself to the Pahoa Police Station "where later, he would be free to go." Id. ¶ 31. Plaintiff drove to the Pahoa Police Station—at approximately 11:02am—with a police officer following behind him. Id. ¶¶ 31, 33.

When Plaintiff arrived at Pahoa Police Station, that same officer directed him into an interrogation room and ordered him to remain there. Id. ¶ 34. Upon Defendant Jelsma's arrival at the station, Plaintiff asked him if he intended to conduct the Advice of Rights so that Plaintiff would be free to leave. Id. ¶¶ 35-36. Defendant Jelsma instructed Plaintiff to "wait." Id. ¶ 37. When Plaintiff asked if he was under arrest,

Defendant Jelsma first answered "No," id. ¶¶ 38-39, and then told Plaintiff loudly: "No you are not under arrest, but you are not free to leave," id. ¶ 41. When Plaintiff repeated Defendant Jelsma's statement, Defendant Jelsma confirmed: "Yes, you can't leave, you need to wait." Id. ¶¶ 42-43.

At this point, Plaintiff was thirsty and asked Defendant Jelsma if he could get his hydro-flask from his truck. Id. ¶ 46. Defendant Jelsma agreed, and armed officers escorted Plaintiff to his truck and back into the interrogation room. Id. ¶ 47.

Once Plaintiff arrived back in the interrogation room, he again asked Defendant Jelsma about his plan regarding Brooks. Id. ¶ 48. Defendant Jelsma ignored Plaintiff, id., and Plaintiff began to believe that Defendant Jelsma was "trying to discredit [him] and ruin his reputation and standing in the community," id. ¶ 50.

At approximately 2:00pm, a detective placed Plaintiff under arrest for three counts of Terroristic Threatening in the First Degree and six firearm violations. Id. ¶ 51. Plaintiff was then released pending further investigation after spending over four hours in custody. Id. ¶ 53. Defendants thereafter issued a media release about Plaintiff's arrest and charges, which they followed with another media release containing the criminal charges against Plaintiff and a recent photograph of

him.  Id. ¶ 52.  The Prosecuting Attorney for the County of
Hawaii, however, ultimately declined to prosecute Plaintiff.
Id. ¶ 55.

On or about January 28, 2018, the day after
Plaintiff's arrest, Brooks threatened Plaintiff's son's life at
his workplace.  Id. ¶ 54.  Defendants did not intervene.  Id.

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes
the Court to dismiss a complaint that fails "to state a claim
upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).
Rule 12(b)(6) is read in conjunction with Rule 8(a), which
requires only "a short and plain statement of the claim showing
that the pleader is entitled to relief."  Fed. R. Civ. P.
8(a)(2).  The Court may dismiss a complaint either because it
lacks a cognizable legal theory or because it lacks sufficient
factual allegations to support a cognizable legal theory.
Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
1988).

In resolving a Rule 12(b)(6) motion, the Court must
construe the complaint in the light most favorable to the
plaintiff and accept all well-pleaded factual allegations as
true.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783
(9th Cir. 2012).  The complaint "must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"[1] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).

When the Court dismisses a complaint pursuant to Rule 12(b)(6) it should grant leave to amend unless the pleading cannot be cured by new factual allegations. <u>OSU Student All. v. Ray</u>, 699 F.3d 1053, 1079 (9th Cir. 2012).

## DISCUSSION

### I. Claims Against Defendant Jelsma in his Official Capacity

Plaintiff brings claims against Defendant Jelsma in his individual and official capacity. Compl. ¶ 3. Personal capacity suits, on the one hand, seek to impose personal liability upon a government official for actions he takes under color of state law. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991).

---

[1] The Court notes that the Complaint provides a seemingly incomplete picture of the facts and events giving rise to Plaintiff's claims for relief. Because the Complaint's allegations largely constrain the Court's review on this motion to dismiss, the Court finds it difficult to make sense of what happened between Plaintiff, Brooks, Defendant Jelsma, and the other law enforcement officers involved in the events relevant to this matter. As Plaintiff's Complaint is dismissed without prejudice herein, any amended pleading should set forth the facts necessary to give the Court a full understanding of what occurred.

Official capacity suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978). Courts, therefore, generally treat such suits as suits against the governmental entity. Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Carnell v. Grimm, 872 F. Supp. 746, 752 (D. Haw. 1994) (dismissing claims against officials in their official capacity as duplicative where the municipality had also been sued); Freeland v. Cty. of Maui, No. CIV. 11-00617 ACK-KS, 2013 WL 6528831, at *5 (D. Haw. Dec. 11, 2013) ("[T]he official-capacity claims 'duplicate[ ] the claims asserted against the [County of Maui]' and are therefore dismissed." (alterations in original) (citation omitted)). Accordingly, the Court dismisses the claims against Defendant Jelsma in his official capacity with prejudice.[2]

---

[2] In addition, courts generally disfavor the use of Doe defendants. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). The Federal Rules of Civil Procedure do not contain a provision permitting a plaintiff's use of fictitious defendants. See Fifty Assocs. v. Prudential Ins. Co., 446 F.2d 1187, 1191 (9th Cir. 1970). In situations where the identity of alleged defendants will not be known prior to the filing of a complaint, however, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Wilkes v. HCCC Cent. Hosp., Civ. No. 11-00041 HG-BMK, 2011 WL 563987, at *4 (D. Haw. Feb. 7, 2011). When there are named Defendants, such as here, the inclusion of Doe defendants is "simply an inkblot on the pleadings with no procedural or substantive effect on the action." Winnemucca Indian Colony v. U.S. ex rel. Dep't of the Interior, No. 3:11-CV-00622-RCJ-VPC, 2012 WL 2789611, at *7 (D. Nev. July 9, 2012).
(continued . . . . )

## II.  Section 1983 Claim (Count I) Against Defendant Jelsma

The County Defendants move to dismiss Plaintiff's section 1983 claim against Defendant Jelsma based on qualified immunity.  Defs.' Mem. in Supp. of Mot. to Dismiss ("MTD") at 2. Qualified immunity shields government officials who perform discretionary functions from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In deciding whether a government official is entitled to qualified immunity in a section 1983 action, courts must determine: (1) the constitutional right allegedly violated; (2) whether the right was clearly established[3]; and (3) whether a reasonable official would have believed the official's conduct to be lawful.  Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir.1992) (citing Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991)).

---

(continued . . . . )

Here, the Complaint does not contain any specific allegations against the Doe Defendants.  Yet, while the Court is mindful of the general rule against Doe Defendants, it declines to dismiss the claims against them at this time.  It appears that Plaintiff may be able to determine the identities of the Doe Defendants in due course, and Plaintiff has indicated that he will amend the Complaint to state the Doe Defendants' true names once they are ascertained. Compl. ¶ 4.  The Court will grant leave for Plaintiff to amend his Complaint, but notes that if the Doe Defendants remain in the Complaint, they may be subject to dismissal in the future.

[3] To analyze whether a right was clearly established, courts attribute to defendants knowledge of constitutional developments at the time of the alleged violations, including all available case law.  Fed. Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 477 (9th Cir. 1991).

Whether an official is protected by qualified immunity often turns on the "objective legal reasonableness" of his action. Anderson v. Creighton, 483 U.S. 635, 639 (1987). If the action at issue is an allegedly unlawful arrest, qualified immunity will shield the arresting officers if a reasonable police officer would have believed that probable cause existed to arrest the plaintiff. Hunter v. Bryant, 502 U.S. 224, 226-27 (1991).

In this case, the Complaint alleges that Defendant Jelsma deprived Plaintiff of his Fourth Amendment right to be free from arrest unsupported by a warrant or probable cause. Compl. ¶ 73a. Plaintiff further alleges that his arrest violated LEOSA and Plaintiff's "legal right to carry concealed weapons." Id. ¶ 73b. The issue therefore is (1) whether Defendant Jelsma had probable cause to arrest Plaintiff, or, if not, (2) whether a reasonable officer in Defendant Jelsma's position would have believed that he had probable cause arrest Plaintiff in light of clearly established law and the information he possessed and therefore is entitled to qualified immunity. See Hunter, 502 U.S. at 227.

Probable cause exists "when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Fayer v. Vaughn,

649 F .3d 1061, 1064 (9th Cir. 2011) (quoting United States v.
Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007)); Michino v. Lewis,
No. CIV. 13-00546 ACK, 2015 WL 3752503, at *5 (D. Haw. June 16,
2015) ("A warrantless arrest is lawful under the Fourth
Amendment . . . if it is accompanied by probable cause to
believe that the arrestee has committed, or is committing, an
offense." (citation and internal quotation marks omitted)).

Here, the Complaint alleges that officers responded to
Plaintiff's 9-1-1 call reporting that Brooks threatened
Plaintiff and "fired a round at him." Compl. ¶¶ 11-13. Upon
arrival, Defendant Jelsma asked Plaintiff if he had firearms in
his vehicle. Id. ¶ 16. When Plaintiff answered affirmatively,
Defendant Jelsma asked for consent to search the vehicle. Id.
Plaintiff consented. Id. ¶ 17. When officers searched
Plaintiff's vehicle, they recovered a shotgun and a 9mm handgun.
Id. ¶ 28. Plaintiff was later arrested for, among other
charges, six firearm violations. Id. ¶ 51.

Relevant here, Hawaii Revised Statutes ("HRS") § 134-
23 provides:

> Except as provided in section 134-5, all
> firearms shall be confined to the
> possessor's place of business, residence, or
> sojourn; provided that it shall be lawful to
> carry unloaded firearms in an enclosed
> container from the place of purchase to the
> purchaser's place of business, residence, or
> sojourn, or between these places upon change
> of place of business, residence, or sojourn,

> or between these places and the following:
> (1) A place of repair; (2) A target range;
> (3) A licensed dealer's place of business;
> (4) An organized, scheduled firearms show or
> exhibit; (5) A place of formal hunter or
> firearm use training or instruction; or (6)
> A police station.

HRS § 134-23 defines the required "enclosed container" as "a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm." Id. Violation of the statute is considered a class B felony. Id. Moreover, HRS § 134-24 is virtually identical to § 134-23, except that the former applies to unloaded firearms, while the latter applies to loaded firearms. A violation of HRS § 134-24 is considered a class C felony.

The Complaint contains no allegations showing that the firearms in Plaintiff's vehicle were lawful under HRS § 134-23 or HRS § 134-24. Specifically, the firearms found in Plaintiff's vehicle were not kept in his "place of business, residence, or sojourn." HRS § 134-23. Nor does the Complaint contain allegations establishing that Plaintiff was transporting the firearms between his "place of business, residence, or sojourn" and one of the six permissible locations the statute enumerates. Id. Further, the Complaint is devoid of allegations showing that Plaintiff's possession of the firearms in his vehicle was permissible under HRS § 134-5, which is listed as a specific exception to HRS § 134-23's restrictions.

Indeed, Plaintiff does not allege that the firearms were in his vehicle "while actually engaged in hunting or target shooting or while going to and from the place of hunting or target shooting." HRS § 134-5. Thus, when officers performed a vehicle search with Plaintiff's consent and recovered the shotgun and 9mm handgun, Compl. ¶ 28, it appeared to them that Plaintiff had committed a felony. On the basis of Plaintiff's allegations, therefore, Officer Jelsma had "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense ha[d] been or [wa]s being committed by the person being arrested." Fayer, 649 F.3d at 1064 (citations omitted).

        Plaintiff argues that despite his possession of apparently unlawful firearms in his vehicle, Defendant Jelsma did not have probable cause to arrest him because Plaintiff is authorized to carry concealed weapons under LEOSA. E.g., Opp. at 10, 17-20. This argument fails. LEOSA provides as follows:

> Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified retired law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b).

18 U.S.C. § 926C(a) (emphasis added). Subsection D, which concerns the identification required for an individual to

lawfully carry a concealed firearm under LEOSA, directs that an individual who is a qualified retired law enforcement officer under the statute must <u>carry</u> either:

> (1) a photographic identification issued by the agency from which the individual separated from service as a law enforcement officer that identifies the person as having been employed as a police officer or law enforcement officer and indicates that the individual has, not less recently than one year before the date the individual is carrying the concealed firearm, been tested or otherwise found by the agency to meet the active duty standards for qualification in firearms training as established by the agency to carry a firearm of the same type as the concealed firearm;

> <u>or</u>

> (2) (A) a photographic identification issued by the agency from which the individual separated from service as a law enforcement officer that identifies the person as having been employed as a police officer or law enforcement officer;

> <u>And</u>

> (B) a certification issued by the State in which the individual resides or by a certified firearms instructor that is qualified to conduct a firearms qualification test for

14

> active duty officers within that
> State that indicates that the
> individual has, not less than 1
> year before the date the
> individual is carrying the
> concealed firearm, . . . met
> [certain qualification
> standards].

Id. § 926C(d)(1)-(2) (emphasis added). Thus, LEOSA requires

that Plaintiff be carrying one of these required forms of

identification in order to lawfully carry a concealed firearm.[4]

Plaintiff does not plausibly allege that he satisfied

LEOSA's identification requirement at the time of his arrest.

The Complaint's allegations fail in at least two ways. First,

the Complaint alleges solely that Plaintiff "had" the necessary

identification—not that he was carrying it at the time of the

vehicle search and his arrest, as LEOSA requires. See, e.g.,

Compl. ¶ 65. Second, the Complaint alleges only that Plaintiff

"had a certificate, <u>one year before he started</u> carrying a

---

[4] The County Defendants also emphasize that Plaintiff was carrying multiple firearms despite LEOSA providing only that a qualified law enforcement officer "may carry a concealed firearm." E.g., MTD at 7; Defs.' Reply at 2-3 (quoting 18 U.S.C. §926C(a)). The County Defendants have not cited any authority supporting this interpretation of the statute and the Court need not address it as it finds Plaintiff's allegations deficient on other grounds. The Court notes, however, that 18 U.S.C. 926C contains several references to "a concealed firearm," which seem to indicate that carrying multiple concealed firearms may be impermissible under LEOSA. E.g., 18 U.S.C. 926C(d)(1) (stating that one form of photographic identification sufficient under LEOSA must show that an individual had "not less recently than one year before the date the individual is carrying <u>the concealed firearm</u>, been tested or otherwise found by the agency to meet the active duty standards for qualification in firearms training as established by the agency <u>to carry a firearm of the same type as the concealed firearm</u> . . . .") (emphasis added)). In light of this language, moreover, the Court notes that the Complaint does not allege that Plaintiff was ever qualified to carry a shotgun, which is a firearm "of the same type" as one of his concealed firearms here.

concealed firearm" stating that he was qualified to do so, id. ¶ 66 (emphasis added). But the certificate LEOSA requires must show that Plaintiff qualified "less than 1 year before the date [he] [wa]s carrying the concealed firearm," and must be carried in order for Plaintiff's concealed firearm to be lawful, see 18 U.S.C. § 926C(d)(2)(B).[5] Put simply, Plaintiff has failed to plausibly establish that he satisfied LEOSA's identification requirements at the time of the vehicle search and his arrest. That failure means that Plaintiff was not lawfully carrying a concealed firearm under LEOSA regardless of whether Defendant Jelsma knew, or should have known, that Plaintiff may have satisfied certain of LEOSA's other requirements.

In Plaintiff's Opposition, he contends for the first time that he "had, in his possession, a photo ID from the Hawaii County Police Department identifying himself as a retired police officer." Opp. at 17-18. As an initial matter, Plaintiff may not supplement the allegations of the Complaint through his Opposition. Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a

---

[5] Plaintiff does allege that, "[i]n the year before January 26, 2017, [he] met standards for qualification in firearms training for active law enforcement officers with the Hawaii County Police Department." Compl. ¶ 60. He does not allege, however, that he was carrying a certificate reflecting his timely qualification when he was arrested—or that he was carrying the accompanying photographic identification—necessary for Plaintiff to satisfy 18 U.S.C. § 926C(d)(2)(A)-(B).

plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (citations omitted)); Yamauchi v. Cotterman, 84 F. Supp. 3d 993, 1009 (N.D. Cal. 2015) ("[A]rgument in  opposition cannot cure a defect in the pleading").  The Complaint alleges only that "Plaintiff had a photo ID" from the Hawaii County Police Department "[a]t all times relevant," not that he had an ID "in his possession" at the time of arrest.  Compare Compl. ¶ 65 with Opp. at 17–18. The distinction is significant, as LEOSA requires that Plaintiff be "carrying" the proper identification at the time he was carrying a concealed firearm.  18 U.S.C. § 926C(a).

Even if Plaintiff had the necessary ID in his possession at the time of arrest, however, that says nothing about the additional certificate LEOSA requires.  The Opposition reinforces the defects in the Plaintiff's allegations regarding his certificate.  While LEOSA directs that Plaintiff must be carrying the certificate in order to lawfully possess a concealed firearm, 18 U.S.C. § 926C(a), the Opposition simply repeats the allegation that Plaintiff "had a certificate."  Opp. at 18 (citing Compl. ¶ 66).  Further, while the Opposition confirms that Plaintiff's certificate was "awarded one year before he started carrying a concealed firearm," Opp. at 2 (citing Compl. ¶ 65), LEOSA requires that the certificate state that Plaintiff qualified "less than 1 year before the date [he]

17

[wa]s carrying the concealed firearm." 18 U.S.C. §
926C(d)(2)(B). Thus, Plaintiff's own allegations make clear
that his possession of concealed firearms was not lawful under
LEOSA at the time of the vehicle search or his arrest.

The Court also notes that an allegation that Plaintiff
showed Defendant Jelsma (or any other officer) his LEOSA
credentials at the time of search or arrest is conspicuously
absent from the Complaint. Indeed, the Complaint does not
indicate that Plaintiff even mentioned his eligibility to carry
a concealed firearm under LEOSA at that time of his arrest. MTD
at 6-7. Plaintiff contends that Defendant Jelsma should have
"uncovered" his LEOSA eligibility through further investigation,[6]
Opp. at 18-20, but LEOSA's privileges are contingent upon
"Qualified Law Enforcement Officers" fulfilling their duties—
namely, those requiring proper identification. Those duties are
Plaintiff's; they are not Defendant Jelsma's.

Here, the Complaint shows that Plaintiff did not
discharge his obligation under LEOSA to carry proper
identification. Accordingly, Plaintiff's alleged eligibility to
carry a concealed firearm under LEOSA was not part of Defendant
Jelsma's (or any other officer's) determination of probable

---

[6] Plaintiff's claim that Defendant Jelsma could have "uncovered" his LEOSA
eligibility through investigation, Opp. at 18-20, seems to indicate that
Plaintiff's eligibility was not apparent to Defendant Jelsma at the time of
the search or arrest, as it undoubtedly would have been had Plaintiff been
carrying the forms of identification LEOSA requires.

cause to arrest, which "exists when, under the totality of the circumstances <u>known to the arresting officers</u>, a prudent person would have concluded that there was a fair probability that [the Plaintiff] had committed a crime." <u>United States v. Buckner</u>, 179 F.3d 834, 837 (9th Cir. 1999)(emphasis added) (quoting <u>United States v. Garza</u>, 980 F.2d 546, 550 (9th Cir. 1992). Under these circumstances, Defendant Jelsma had probable cause to arrest Plaintiff for at least firearm violations. Moreover, he is also shielded by qualified immunity from liability for civil damages because his "conduct d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow</u>, 457 U.S. at 818. The Court therefore dismisses Count I against Defendant Jelsma without prejudice.

## III. Section 1983 Claim (Count II) Against Defendant County

The County Defendants contend that Plaintiff's section 1983 claim against the County should be dismissed because Plaintiff was not deprived of a federal constitutional or statutory right. MTD at 8. The Court agrees and will dismiss Count II without prejudice.

Section 1983 provides a remedy for the deprivation of a right secured by the Constitution or federal statutes by any person under color of state law. 42 U.S.C. § 1983; <u>Maine v. Thiboutot</u>, 448 U.S. 1, 4 (1980); <u>Gibson v. U.S., 781 F.2d 1334,</u>

1338 (9th Cir. 1986). "Persons" covers "state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities." Vance v. Cty. of Santa Clara, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996). For an official capacity suit, municipalities and their agents must cause the violation of a plaintiff's federal constitutional or statutory right through a policy or custom. Monell, 436 U.S. at 694.

To establish a section 1983 claim for municipal liability, moreover, the plaintiff must show: (1) that he possessed a federal constitutional or statutory right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional or statutory right; and (4) that the policy is the moving force behind the violation of the plaintiff's federal constitutional or statutory right. Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred[.]" Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

The Fourth Amendment confers the right to protection from arrest without probable cause. Beck v. Ohio, 379 U.S. 89, 91 (1964). Thus, "a claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided

20

the arrest was without probable cause or other justification."

Dubner v. City and Cty. of San Francisco, 266 F.3d 959, 964 (9th

Cir. 2001) (emphasis added). Courts have explained that

"[p]robable cause to arrest or detain is an absolute defense to

any claim under § 1983 against police officers for wrongful

arrest . . . as the lack of probable cause is a necessary

element" of the claim. Lacy v. Cty. of Maricopa, 631 F.Supp.2d

1183, 1193 (D. Ariz. 2008); see also Hart v. Parks, 450 F.3d

1059, 1069 (9th Cir. 2006).

       As explained in Section II, supra, Defendant Jelsma

had probable cause to arrest Plaintiff. After officers searched

Plaintiff's vehicle with his consent, they recovered a shotgun

and 9mm handgun. Compl. ¶ 28. Plaintiff's possession of these

firearms violated HRS § 134-23 or HRS § 134-24 (depending on

whether the firearms were loaded or not), and Plaintiff has not

plausibly alleged that he was in lawful possession of those

firearms under LEOSA at the time of the vehicle search and his

subsequent arrest. Thus, Defendant Jelsma had probable cause to

arrest Plaintiff and did not violate any federal statutory right

that LEOSA confers. Absent an underlying violation of

Plaintiff's federal constitutional or statutory rights, there

can be no Monell liability against the County.[7] Quintanilla v.

---

[7] Because Plaintiff suffered no violation of a federal constitutional or
statutory right at the hands of Defendant Jelsma, the Court need not address
(continued . . . . )

<u>City of Downey</u>, 84 F.3d 353, 355 (9th Cir. 1996) ("[A] public entity is not liable for § 1983 damages under a policy that can cause constitutional deprivations, when the factfinder concludes that an individual officer, acting pursuant to the policy, inflicted no constitutional harm to the plaintiff."); <u>see also</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer" any alleged authorization by the department "is quite beside the point."); <u>Scott v. Henrich</u>, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of [federal] rights.").

Under the facts alleged in the Complaint, Defendant Jelsma had probable cause to arrest Plaintiff. Plaintiff has not been deprived of a right secured by the Constitution or a federal statute. As a consequence, Plaintiff's <u>Monell</u> claim against the County fails and is dismissed without prejudice.

---

(continued . . . . )
his allegations that the County had "an official policy, custom and/or usage that was the moving force behind the violations of [his] constitutional right[s]." <u>See</u> Compl. ¶¶ 81(a)-(e). Defendant Jelsma's conduct was not the moving force behind a violation of a federal constitutional or statutory right because Plaintiff has not plausibly alleged his eligibility to carry a concealed firearm under LEOSA.

**False Arrest/False Imprisonment (Count III) Against the County Defendants[8]**

Plaintiff's state-law false arrest/false imprisonment claim fails for a similar reason. Courts have explained that, because "a person who is falsely arrested is at the same time falsely imprisoned, false arrest and false imprisonment as tort claims are distinguishable only in terminology." Reed v. City & Cty. of Honolulu, 76 Haw. 219, 230, 873 P.2d 98, 109 (Haw. 1994). To state a claim for false arrest or false imprisonment under Hawaii law, "the essential elements are (1) the detention or restraint of one against his [or her] will, and (2) the unlawfulness of such detention or restraint." Id. (citations and quotation marks omitted); see also Freeland, 2013 WL 6528831, at *19; Joy v. Hawaii, No. CIV.07-00574 DAE-LEK, 2008 WL 4483798, at *4 (D. Haw. Sept. 26, 2008). Significantly, a determination that the arresting officer "had probable cause is a defense to the common law claims of false arrest[] [and] false imprisonment[.]" Reed, 76 Haw. at 230, 873 P.2d at 109 (citing House v. Ane, 56 Haw. 383, 390-91, 538 P.2d 320, 325-26 (Haw. 1975) and Towse v. State, 64 Haw. 624, 635, 647 P.2d 696, 704 (Haw. 1982)); Freeland, 2013 WL 6528831, at *19 ("Probable cause

---

[8] In Plaintiff's Opposition, he requests that the Court "transfer the remaining state law causes of action back to the Third Circuit Court, State of Hawaii" in the event the Court "grants dismissal of the federal causes of action[.]" Opp. at 24. Because Plaintiff's federal causes of action are dismissed without prejudice, however, the Court will not address Plaintiff's request.

is an affirmative defense to the claim of false imprisonment."
(citation omitted)).

Here, the County Defendants argue that Plaintiff
cannot show that his detention or restraint were unlawful
because Defendant Jelsma had probable cause to arrest Plaintiff.
The Court agrees, as Plaintiff's possession of firearms in his
vehicle violated HRS § 134-23 or HRS § 134-24, and nothing in
the Complaint plausibly alleges that Plaintiff was in lawful
possession of the firearms under LEOSA at the time of his
arrest. Defendant Jelsma made a warrantless arrest of Plaintiff
after he "saw and observed what reasonable persons would believe
to be an offense being committed in [his] presence." House, 56
Haw. at 391, 538 P.2d at 326.

Moreover, Plaintiff alleges that Defendant Jelsma held
him at Pahoa Police Station[9] "for over four (4) hours, without
reasonable suspicion and/or probable cause." As an initial
matter, when Defendant Jelsma held Plaintiff at the station for
questioning, he had probable cause to arrest Plaintiff. In
addition, the Complaint establishes that Plaintiff drove himself
to the station, Compl. ¶ 31, and was permitted to retrieve his
hydro-flask from his vehicle upon request, id. ¶ 47. Because

---

[9] In certain instances, Plaintiff alleges that he drove to the Keaau Police
Station rather than the Pahoa Police Station. See, e.g., Compl. ¶¶ 84-85.
The Court assumes that Plaintiff drove to the Pahoa Police Station.

Plaintiff's detention and restraint was lawful, the Court

dismisses his false arrest/false imprisonment claim without

prejudice.

## V. Defamation "Per Se" (Count IV), "Per Quod" (Count V), and False Light (Count VI) Against the County Defendants

The County Defendants move to dismiss Plaintiff's

claims for defamation and false light, arguing that the

statements Plaintiff alleges were defamatory and false were in

fact true.  MTD at 9.  Under Hawaii Law, a plaintiff must

adequately plead four elements to state a claim for defamation[10]:

"(1) a false and defamatory statement concerning another; (2) an

unprivileged publication to a third party; (3) fault amounting

at least to negligence . . . ; and (4) either actionability of

the statement irrespective of special harm or the existence of

special harm caused by the publication."  Gonsalves v. Nissan

Motor Corp. in Hawaii, Ltd., 100 Haw. 149, 171, 58 P.3d 1196,

1218 (Haw. 2002) (alteration in original) (citation omitted).

The truth of the allegedly defamatory statement "is a complete

defense to an action for defamation."  Basilius v. Honolulu Pub.

Co., 711 F. Supp. 548, 551 (D. Haw.), aff'd sub nom. Polycarp

---

[10] "Although false-light and defamation claims are not identical, there is a substantial overlap between the claims. Courts have held that where . . . a false-light claim is based on the same statements as a defamation claim, the false-light claim must be dismissed if the defamation claim is dismissed." Wilson v. Freitas, 121 Haw. 120, 130, 214 P.3d 1110, 1120 (Haw. Ct. App. 2009) (citation omitted); see also Nakamoto v. Kawauchi, 139 Haw. 421, 391 P.3d 1243 (Haw. Ct. App. 2017), as amended (June 15, 2017), cert. allowed, No. SCWC-13-0004947, 2017 WL 3405456 (Haw. Aug. 9, 2017).  The Court thus analyzes Plaintiff's false light claim together with his defamation claims.

<u>Basilius v. Honolulu Pub. Co.</u>, 888 F.2d 1394 (9th Cir. 1989)

(citations omitted). Additionally, the "[l]iteral truth of a

publication need not be established, only that the statement is

'substantially true.'" <u>Id.</u> (quoting <u>Alioto v. Cowles</u>

<u>Communications, Inc.</u>, 623 F.2d 616, 619 (9th Cir. 1980)).

Plaintiff's defamation and false light claims are

predicated on his allegations that the County Defendants' media

releases were false and inaccurate. <u>See, e.g.</u>, Compl. ¶ 99; <u>see</u>

<u>also</u> Opp. at 27-30. To that end, Plaintiff alleges that the

County's releases about the nature and subject of his alleged

criminal misconduct and arrest were: (1) "in fact untrue"; (2)

"taken out of context . . . and [they] should have stopped or

clarified such communications"; (3) "highly suspect and lacked

credibility"; and (4) "published, communicated and disseminated,

ratified and adopted to the Defendants' employees, and the

community at large." <u>Id.</u> Yet the Complaint does not plausibly

allege that, or attempt to explain how, the media releases were

untrue.

Rather, the Complaint alleges only that "Defendants

issued a media release about the Plaintiff's arrest and charges,

followed by another media release with the criminal charges and

recent picture of the Plaintiff for the local news media which

was also published." <u>Id.</u> ¶ 52. Similarly, Plaintiff's claim

for false light relies upon the allegation that the County

Defendants' releases published: "the false, factual background that form the basis for the investigation into Plaintiff; . . . the reasons for the investigation; . . . [and] the Plaintiff's arrest, among other things." Id. ¶ 114. But Plaintiff was in fact arrested and charged with criminal violations. Id. ¶ 51.

Under these circumstances, media releases accurately stating that Plaintiff was arrested and describing the nature of his charges cannot support a claim for defamation. See Basilius, 711 F. Supp. at 551-52 (rejecting argument that a publication's materially accurate report of murder allegations implied that plaintiff had actually committed the murder); see also Martin v. Hearst Corp., 777 F.3d 546, 553 (2d Cir. 2015) ("The news reports at issue in this case . . . . simply state that [the plaintiff] was arrested and criminally charged, both of which [she] admits are true. Reasonable readers understand that some people who are arrested are guilty and that others are not. Reasonable readers also know that in some cases individuals who are arrested will eventually have charges against them dropped."); Wilson v. Freitas, 121 Haw. 120, 131, 214 P.3d 1110, 1121 (Haw. Ct. App. 2009), as amended (Aug. 4, 2009) ("Accurately identifying someone as a suspect in a criminal investigation does not constitute an accusation of guilt and cannot support a claim for defamation, even if the plaintiff proves he is not guilty"); Foley v. Lowell Sun Pub. Co., 404

Mass. 9, 533 N.E.2d 196, 197 (1989) (holding that a newspaper article's report that the plaintiff had been arrested and charged with assaulting a police officer could not reasonably be construed as accusing the plaintiff of actually committing the assault).

Although Plaintiff argues in his Opposition that "Defendants knew that the Terroristic Threatening and firearms charges were false in terms of the underlying facts," Opp. at 27, Plaintiff was in fact charged with those offenses—whether he was guilty of them or not—and he does not allege what made the releases false.[11] E.g., Reeves v. City of W. Liberty, Kentucky, 219 F. Supp. 3d 600, 607 (E.D. Ky. 2016) ("As for Plaintiff's claim of defamation, it is axiomatic that truth is an absolute defense to such a charge. Plaintiff was arrested and the arrest was allegedly published in the newspaper. The Newspaper reported that he had been arrested and listed the charges, which was true—he was arrested. Therefore, under state law no action for defamation can lie."). Because nothing in the Complaint shows that the releases were false or inaccurate in any way, the Court dismisses Plaintiff's defamation and false light claims without prejudice.

---

[11] Thus, notwithstanding that the very limited facts set forth in the Complaint do not appear to justify a charge against Plaintiff of terroristic threatening, it is nevertheless true he was so charged and consequently his claims for defamation fail.

## VI.  Intentional Infliction of Emotional Distress (Count VII) Against the County Defendants

The County Defendants argue that Plaintiff's claim for intentional infliction of emotional distress should be dismissed because Plaintiff cannot show that Defendants acted unreasonably.  MTD at 10.  In Hawaii, the elements of a claim for IIED are: "1) that the conduct allegedly causing the harm was intentional or reckless, 2) that the conduct was outrageous, and 3) that the conduct caused 4) extreme emotional distress to another."  Hac v. Univ. of Hawaii, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (Haw. 2003); Springer v. Hunt, No. CV 17-00269 JMS-KSC, 2018 WL 846909, at *9 (D. Haw. Feb. 13, 2018); see also Nagata v. Quest Diagnostics Inc., 303 F. Supp. 2d 1121, 1125-26 (D. Haw. 2004) (citing Hac and explaining that before that Hac decision, courts in Hawaii required the following elements to state an IIED claim:  "(1) that the act allegedly causing the harm was intentional; (2) that the act was unreasonable; and (3) that the actor should have recognized that the act was likely to result in illness" (citation omitted)).[12]

For conduct to be sufficiently "outrageous," it must be "so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

---

[12] The County Defendants' reliance on the pre-Hac standard to argue that their conduct was not unreasonable is thus misplaced.  Under Hawaii law, the proper inquiry is whether the conduct allegedly causing the harm was outrageous.

civilized community." Restatement (Second) of Torts § 46

comment d. Said differently, for conduct to be sufficiently

outrageous, the case must be "one in which the recitation of the

facts to an average member of the community would arouse his

resentment against the actor and lead him to exclaim,

'Outrageous!'" Id.

Here, the Complaint alleges no viable predicate claim

on which Plaintiff's IIED claim can be based. Luzon v. Atlas

Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1263 (D. Haw. 2003)

("Once the underlying constitutional claims are dismissed, there

is no basis for an IIED claim."). The Court also notes that

Plaintiff has not plausibly alleged outrageous conduct causing

him harm. Plaintiff's IIED claim in this case rests upon

"threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements." Iqbal, 556 U.S. at

678; e.g., Compl. ¶ 124. The Complaint ultimately alleges that

the County Defendants' conduct caused Plaintiff, among other

things, "depression, humiliation, sleep disturbance, nausea,

anxiety, agitation, unprovoked rage and/or rumination, loss of

appetite, isolated and distant from family members [sic], . . .

[and] separation anxiety." Id. ¶ 125.

Plaintiff was arrested after police officers searched

his vehicle and recovered firearms. Id. ¶¶ 28, 51. The

firearms found in the vehicle violated Hawaii law, and the

Complaint does not allege that Plaintiff satisfied the
identification requirements under LEOSA necessary to lawfully
carry the firearms.  See, e.g., id. ¶¶ 65-66.  Defendant Jelsma
thus had probable cause to arrest Plaintiff for the firearms
violations, among other crimes.  See Section II, supra.

Plaintiff argues that Defendant Jelsma's actions were
outrageous because he "arrested the victim of a shooting in this
case."  Opp. at 29.  As explained above, however, Defendant
Jelsma had probable cause to arrest Plaintiff based on at least
firearms violations.  Whether or not Plaintiff was "the victim
of a shooting" does not make an otherwise lawful arrest
unlawful.

In addition, the media releases the County Defendants
later publicized describing Plaintiff's arrest and charges were
accurate.  See Section V, supra; see also Perkel v. City of
Springfield, 10 F. App'x 390, 392 (8th Cir. 2001)
("[P]laintiff's embarrassment about the statements in the police
report was insufficient to sustain an intentional-infliction-of-
emotional-distress claim.").  It is worth noting, moreover, that
Defendant Jelsma permitted Plaintiff to retrieve his hydro-flask
from his truck while Plaintiff was being questioned after
driving himself to the Pahoa Police Station before his arrest.
Compl. ¶¶ 46-47.  Under these circumstances, reasonable persons

could not disagree over whether the conduct Plaintiff alleges remained within the bounds of decency.

The Court dismisses Plaintiff's IIED claim without prejudice.

## VII. Negligent Infliction of Emotional Distress (Count VIII) Against the County Defendants

The County Defendants argue that Plaintiff's negligent infliction of emotional distress claim should be dismissed for the same reason as his IIED claim:  Plaintiff cannot show that Defendants acted unreasonably.  MTD at 10.

Like Plaintiff's IIED claim, his NIED claim fails because Plaintiff has not established a viable predicate claim on which his NIED claim can be based.  Luzon, 284 F. Supp. 2d at 1263 ("Once the underlying constitutional claims are dismissed, the NIED claim, like the IIED claim, fails.").  The Court nevertheless will discuss the claim as set forth in the Complaint.

To demonstrate a claim for NIED, Plaintiff must show:  "(1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress."  Tran v. State Farm Mut. Auto. Ins. Co., 999 F. Supp. 1369, 1375 (D. Haw. 1998) (citing R. Calleon v. Miyagi and MTL, 76 Haw. 310, 320, 876 P.2d 1278 (1994)).  The

Supreme Court of Hawaii has further explained that "an NIED claim is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed 'utilizing ordinary negligence principles.'" Doe Parents No. 1 v. State, Dep't of Educ., 100 Haw. 34, 69, 58 P.3d 545, 580 (Haw. 2002), as amended (Dec. 5, 2002) (citations omitted). A plaintiff need not display any physical manifestation of emotional distress to state a claim for NIED, Milberger v. KBHL, LLC, 486 F. Supp. 2d 1156, 1165-66 (D. Haw. 2007) (Kay, J.) (citation omitted), but he or she "must establish some predicate injury either to property or to another person in order himself or herself to recover for [NIED]." [13]  Springer, 2018 WL 846909, at *9 (alteration in original) (citing Kaho'ohanohano v. Dep't of Human Servs., 117 Haw. 262, 306-07, 178 P.3d 538, 582-83 (Haw. 2008)).

Here, Plaintiff alleges that the County Defendants' conduct caused him a number of injuries. Specifically, he contends that the County Defendants' conduct caused him: "[i]nability to sleep, loss of appetite, depression, sleep disturbance and inability to sleep, nausea, anxiety, agitation, unprovoked rage and/or rumination, isolated and distant from

---

[13] Because the alleged injury in an NIED claim is for psychological distress alone, Courts are careful to "strike a balance between avoiding the trivial or fraudulent claims that have been thought to be inevitable due to the subjective nature of such injury, . . . and promoting the underlying purpose of negligence law[.]" Doe Parents No. 1, 100 Haw. at 69, 58 P.3d at 580 (citation, internal quotation marks, and original alterations omitted).

family members [sic] . . . [and] separation anxiety." Compl. ¶ 129. Plaintiff also asserts in his Opposition that inability to sleep and loss of weight are "physical injuries" that can form the basis of an NIED claim.[14] Opp. at 30.

Plaintiff's NIED claim is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants County of Hawaii and Samuel Jelsma's Motion to Dismiss filed on January 26, 2018, ECF No. 5, and dismisses all of Plaintiff's claims WITHOUT PREJUDICE.

Plaintiff must file an amended complaint within thirty days of the entry of this Order or else judgment will be entered against him. Any amended complaint must correct the deficiencies noted in this Order—and provide all facts necessary to understand Plaintiff's claims for relief—or Plaintiff's claims may be dismissed with prejudice.

---

[14] The Supreme Court of Hawaii has recognized that there are certain cases that "present unique circumstances, which provide the requisite assurance that the plaintiff's psychological distress is trustworthy and genuine, [wherein the Court has] not hesitated to carve out exceptions to [the] general rule that recovery for psychic injury standing alone is permitted only where there is a predicate physical injury to someone, be it a plaintiff or a third person." Doe Parents No. 1, 100 Haw. At 70, 58 P.3d at 581 (internal alterations and quotation marks omitted); see also Guth v. Freeland, 96 Haw. 147, 28 P.3d 982, 989 (Haw. 2001); John & Jane Roes, 1-100 v. FHP, Inc., 91 Haw. 470, 985 P.2d 661 667-68 (Haw. 1999). Here, Plaintiff does not allege "unique circumstances" tending to show the genuineness of his psychological harm, and thus, this case does not present an exception to the general rule that a plaintiff must demonstrate a predicate injury to him or herself or to another to bring an NIED claim. See Freeland, 2013 WL 6528831, at *23 ("The instant case does not fall under one of these . . . exceptions to the general rule that a plaintiff must demonstrate a predicate injury to him or herself or to another in order to bring a claim for NIED.")

IT IS SO ORDERED.

<u>DATED</u>: Honolulu, Hawaii, April 20, 2018



_____
Alan C. Kay
Sr. United States District Judge


<u>Rodrigues, Jr. v. County of Hawaii, et al.</u>, Civ. No. 18-00027 ACK-RLP, Order Granting Defendants County of Hawaii and Samuel Jelsma's Motion to Dismiss Complaint.